Cite as 2023 Ark. App. 321

# ARKANSAS COURT OF APPEALS
### DIVISION IV
No. CR-22-531

| | | |
|---|---|---|
| NEDRA FIELDS | | Opinion Delivered May 31, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-19-1940] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | | AFFIRMED |

## BART F. VIRDEN, Judge

The Pulaski County Circuit Court convicted appellant Nedra Fields of committing a fraudulent insurance act. The trial court placed her on probation for a period of two years and ordered her to pay a fine and court costs. Fields argues that the trial court abused its discretion by admitting prejudicial hearsay evidence. We affirm.

### I. *Background*

The testimony at Fields's bench trial established the following sequence of events. On July 29, 2018, Scott Johnson, a police officer at UAMS, was dispatched to a report of an accident in the hospital's employee parking deck. Fields told Johnson that she had been sitting in her parked 2002 white Ford Explorer taking a break when a 2018 black Mercedes-Benz backed into her vehicle while maneuvering into a parking space. Fields claimed that

the driver of the Mercedes had gotten out of the vehicle and walked into the hospital without acknowledging the accident or Fields's pleas to stop. Johnson saw very little damage to either vehicle. He nevertheless completed an incident report containing the insurance information for the Mercedes and gave Fields a copy of the report. Dr. Swathi Kovelamudi, the driver of the Mercedes, testified that she was surprised to receive a call from her insurer, Esurance, a couple of days after the alleged accident, informing her that a claim had been made. She denied having hit another vehicle.

An audio recording of Fields's telephone call to Esurance on July 31 was played in court without objection. On the recording, Fields stated that she was calling to "start the process" and reported that she had been involved in an accident with Esurance's insured. In describing the accident to the Esurance representative, Fields claimed that Dr. Kovelamudi had struck her vehicle twice from behind. Fields described that her vehicle's rear bumper had been "pushed up a little and it's got a nice dent in it." Fields stated that the Mercedes had some damage as well in that the rear bumper had been dented and had some of her vehicle's white paint on it. Fields also told the representative that she planned to get an estimate on repairs to her vehicle and that she had already been to a chiropractor because she had hurt her neck and back. The representative told Fields, "Give me one second just to submit this information so it can generate for us a claim number." Fields agreed to text-message updates about her claim and was told that an adjuster would contact her that day to "go over the next steps in the claims process." Fields asked what information she needed to provide to her chiropractor, and the representative told her to give him or her the incident

report or the claim number and "then they should be able to speak with us in regard to this claim."

An investigator was assigned to investigate what Esurance described as a suspicious hit-and-run claim. After inspecting Dr. Kovelamudi's Mercedes and finding no damage, the investigator sought a warrant for Fields's arrest.

Fields testified about the circumstances of the accident. She downplayed both her personal injuries and property damage. She stated that she did not know whether her neck and back pain were the result of the car accident or from the stress of her job. Fields further testified that there were a lot of dents on her vehicle's bumper prior to the accident and that she had gotten an estimate for repairs because she had been instructed to do so by Esurance.

Chip Casper, a regional manager for Esurance, testified that a claim file had been prepared with respect to Fields's claim involving Dr. Kovelamudi. As part of the claim file, Fields's initial telephone call to Esurance had been recorded and transcribed. Casper was then asked about the other contents of the claim file and confirmed that Fields had claimed that she sustained personal injuries and property damage. When Casper was asked about Esurance's "exposure" in connection with Fields's claim, he referred to two exhibits in the claim file: exhibit No. 26, which was a bill for neck and back injuries that had been faxed to Esurance from Central Arkansas Chiro, and exhibit No. 27, which was an estimate from Landers Autobody to repair damage to Fields's vehicle.

Counsel for Fields objected to each exhibit on the basis of hearsay and argued that the exhibits did not qualify under the business-records exception pursuant to Ark. R. Evid.

3

803(6). The trial court initially overruled defense counsel's objections, but the trial court later revisited both of its earlier rulings and concluded that the exhibits were not hearsay because they had not been offered to prove the truth of the matter asserted. The following exchange occurred between the trial court and defense counsel:

[DEFENSE COUNSEL]:    So it's offered for the limited purpose that she did go to a chiropractic clinic and she did get an estimate for her damages?

THE COURT:    That's all it's offered for, yes.

[DEFENSE COUNSEL]:    But not for any particulars?

THE COURT:    Right.

## II. *Discussion*

A person shall not commit a fraudulent insurance act. Ark. Code Ann. § 23-66-502(a) (Repl. 2012). "Fraudulent insurance act" means an act or omission committed by a person who, knowingly and with intent to defraud, presents or causes to be presented to an insurer false information as part of or in support of a claim for payment or benefit pursuant to an insurance policy. Ark. Code Ann. § 23-66-501(4)(A)(iii) (Supp. 2021).

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Hearsay is not admissible except as provided by law or by the Rules of Evidence. Ark. R. Evid. 802. A statement made out of court is not hearsay if offered for the purpose of proving the statement was made. *Jackson v. State*, 274 Ark. 317, 624 S.W.2d 437 (1981). The decision to admit or exclude evidence is within the sound discretion of the trial court.

4

*Sitzmann v. State*, 2019 Ark. App. 78, 569 S.W.3d 913. An appellate court will not reverse a trial court's ruling on a hearsay objection unless the appellant can demonstrate an abuse of discretion. *Id.* An abuse of discretion is a high threshold that does not simply require error in the trial court's decision but requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Id.* Additionally, this court will not reverse an evidentiary ruling absent a showing of prejudice. *Id.*

In arguing that the trial court erred in admitting hearsay, Fields contends that there were two truths asserted by the exhibits: (1) that she, either directly or indirectly, submitted an insurance claim, and (2) that the claim was for a payment or benefit. Fields argues that she was prejudiced by the trial court's ruling that the exhibits were not hearsay because there was no other proof that she had made a claim and had sought a payment or benefit.

We first note that Fields has changed her argument on appeal. Below, after obtaining clarification as to the basis of the court's ruling on admissibility, set forth above, defense counsel continued to object on the basis that the exhibits did not qualify under the business-records exception. Defense counsel also said the following:

> Well, I understand the State's not agreeing with what Ms. Fields said was her damages, but they're saying that it's true that she said those things that are in the records. So you're saying that—I mean, I think that you're saying they're automatically the truth that she did actually claim that stuff.

The trial court responded, "No . . . the Court's not looking at it like that." It is well settled that a party is bound by the nature and scope of the objections and arguments made at trial

and may not enlarge or change those grounds on appeal. *Sullivan v. State*, 2012 Ark. 74, 386 S.W.3d 507.

In any event, we agree with the trial court that the exhibits were not hearsay because they were not offered to prove the truth of the matter asserted. Here, the only matters both asserted by the exhibits *and* considered by the trial court were simply that Fields had gone to a chiropractor to be treated for neck and back pain and that her vehicle had been taken to an auto-body shop to get an estimate to repair damage. Neither the extent of Fields's personal injuries and property damage nor the cost to treat her injuries and to repair that damage were "truths" that the trial court needed to consider in determining whether the elements of the fraudulent-insurance-act statute were proved. Both exhibits were part of a claim file compiled by Esurance in connection with the claims process that Fields herself began when she called and spoke with an Esurance representative. Esurance generated a claim number for Fields. Fields questioned the representative about what she needed to provide to ensure that records related to her claim were transmitted to Esurance, and Casper confirmed that those records had, in fact, made it into Esurance's claim file. Fields does not explain, and it is not apparent to us, what—if not a payment or, more broadly, a benefit—she could have been seeking by contacting a third-party's automobile insurance provider about its insured, whom she had accused of being at fault in a car accident. We cannot say that the trial court abused its discretion in admitting the exhibits for a nonhearsay purpose.

While Fields claims that there was no other evidence that she submitted a claim for payment or benefit, her telephone call to Esurance demonstrated that she initiated the claims

process, that she asserted personal injuries and property damage allegedly caused by its insured, and that Esurance assigned to the claim a number in response to Fields's allegations. There is no apparent reason that we can discern for contacting another party's insurer about damages allegedly caused by its insured other than a desire to be somehow compensated. Moreover, Casper confirmed that Esurance's claim file contained records related to Fields's claim for damages for which Esurance faced some financial exposure.

Furthermore, although Fields suggests that the trial court considered the exhibits for the truth of the matter asserted, in cases tried without a jury, there is a presumption that a trial court will consider only competent evidence. *Banks v. State*, 2009 Ark. 483, 347 S.W.3d 31. Here, in addition to this presumption, the trial court expressly stated that it considered the evidence for a limited purpose and did not consider any truth asserted by the individual records themselves. In the absence of a showing to the contrary, we accept that the trial court did not consider the exhibits for any improper purpose.

Affirmed.

HARRISON, C.J., and ABRAMSON, J., agree.

*Mac J. Carder*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.